BEST, as Receiver, Appellant, vs. STATE BANK OF BRUCE and another, Respondents.

*September 11—October 9, 1928.*

For the appellant there was a brief by *McGill & Williams* of Ladysmith, attorneys, and *Upham, Black, Russell & Richardson* and *Clark M. Robertson,* all of Milwaukee, of counsel, and oral argument by *Mr. Robertson.*

For the respondents there was a brief by *Alexander Wiley* and *Robert L. Wiley,* both of Chippewa Falls, and oral argument by *Alexander Wiley.*

OWEN, J. On or before March 6, 1923, the First National Bank of Bruce had a paid-up capital and surplus of $30,000. One M. Nygaard was the vice-president and principal managing officer of the bank. He was authorized by the board of directors to make loans not exceeding $2,000 and to rediscount the paper of the bank to the federal reserve bank. Prior to March 6, 1923, he had rediscounted some paper purporting to be the paper of the First National Bank of Bruce to the Bankers Finance Corporation, predecessor of the Wisconsin Mortgage and Securities Company. Such paper was made payable to the First National Bank of

Bruce and, upon consummation of the rediscount transaction to the Bankers Finance Corporation, was indorsed "First National Bank of Bruce, by M. Nygaard, V. Pres." Among such notes so transferred prior to March 6, 1923, was a note purporting to have been executed by one O. E. Maxson to the said First National Bank of Bruce for $2,500. Under date of February 15, 1923, Nygaard wrote the Bankers Finance Corporation at Milwaukee stating that Maxson had been sawing lumber, that he had a contract for sale to responsible parties, that it was covered by insurance, and further said:

"Here is what we like to do in order to clean up all outstanding bills against Maxson, such as labor, taxes, etc. Mr. Maxson is the owner of 2,035 acres of land south of Bruce. We like to swing his note for $10,000, and out of that he likes to pay the note of $2,500, the balance to be used as stated before. For every car shipped out the proceeds will be applied on this note. If it is possible for you to use this loan let us know by return mail and obliged."

Under date of March 3, 1923, the Bankers Finance Corporation replied to this letter, expressing the opinion that they would be able to carry the note, making a number of inquiries, among which, "Are we right in assuming that this will come to us bank-indorsed?" In closing, they said: "We trust that you will write us immediately, telling us about the length of time this is to run and whether or not it is to be bank-indorsed, then we can write to you definitely." In response to this letter Maxson and Nygaard appeared at the offices of the Bankers Finance Corporation in Milwaukee in the morning of March 6th, where, after some negotiations, "Maxson then gave his note dated and made on that day for $10,000, payable to the order of the First National Bank of Bruce. Nygaard then placed the indorsement of the bank on the note. The note for $2,500 and interest was then returned and a check for the balance of $7,398, dated on that day, was given by the Bankers Finance

Corporation on a Milwaukee bank, payable to the order of the First National Bank of Bruce. The check was cashed in Milwaukee the next day, the proceeds were used by Nygaard and Maxson for their own purposes, but just in what manner the evidence does not disclose," as found by the court.

The court further found that when the notes for $2,500 and $10,000 were given, Maxson had no such financial standing as would entitle him to credit, and that Nygaard and Maxson had entered into a fraudulent scheme to obtain money by means of notes signed by said Maxson and bearing the indorsement of First National Bank of Bruce in matters concerning which the bank was in no manner interested except in loaning the credit of its indorsement. Thereafter the First National Bank of Bruce consolidated with the State Bank of Bruce under the charter of the latter bank, and Nygaard became the cashier and principal managing officer of the latter bank. When the $10,000 note came due the Bankers Finance Corporation took the matter up with Nygaard, who secured renewal notes from Maxson, payable to the State Bank of Bruce, which Nygaard caused to be indorsed by the State Bank of Bruce. However, the paper was never part of the assets of the First National Bank of Bruce or the State Bank of Bruce, nor was the original note, nor any of the renewals, entered upon the records of either bank.

Prior to the commencement of this action the Wisconsin Mortgage and Securities Company succeeded to the title of the Bankers Finance Corporation and said paper, and this action is brought by the receiver of the latter company.

Appellant urges that the Bankers Finance Corporation was a *bona fide* purchaser and holder in due course of said paper. While banks, both state and national, have power to rediscount paper owned by them and become liable thereon as indorsers, they have no power to lend their credit or become liable as accommodation indorsers. This question was

recently thoroughly examined by this court, and nothing further need be said thereon. *American Express Co. v. Citizens State Bank,* 181 Wis. 172, 194 N. W. 427. . The court found upon very convincing evidence that this note was executed on March 6th by Maxson in the office of the Bankers Finance Corporation. Nygaard then placed the indorsement of the bank on the note, delivered it to the Bankers Finance Corporation in return for its check for $7,398, being the balance remaining after deducting Maxson's note for $2,500 and interest. As before stated, this finding is well supported by the evidence and cannot be disturbed.

It is apparent that the Finance Corporation knew that this note had never become a part of the assets of the bank and that the bank had not invested a dollar in it. The transaction amounted to no more nor less than a loan by the Finance Corporation to Maxson, the bank becoming an accommodation indorser on his note. It knew this not only by reason of the transaction which took place in its office, but by reason of the letter written by Nygaard opening the negotiations. This letter plainly indicated that the bank had not loaned Maxson $10,000, and that it could not do so or would not do so unless the Bankers Finance Corporation would carry the note. It knew that the transaction did not constitute a *bona fide* rediscount for the benefit of the bank, and that the indorsement of the bank on said note was for the sole benefit of Maxson.

It is urged that the Bankers Finance Corporation paid value for the note because it surrendered the previous note of Maxson in the sum of $2,500, concerning the infirmities of which it had no knowledge. But this was not value passing to the bank. The bank had no primary liability upon this note. Maxson was the one primarily liable, and if the Bankers Finance Corporation saw fit to surrender this note as partial consideration for Maxson's new note of $10,000

with the *ultra vires* indorsement of the bank, it was its privilege to do so, and upon canceling Maxson's note for $2,500 they relieved the bank of any liability it might have been under by reason of its indorsement of the $2,500 note. These considerations make the judgment of the lower court imperative, and make it unnecessary to consider other questions discussed in briefs of counsel.

*By the Court.*—Judgment affirmed.